## No. 12,806.

STATE EX REL. PATSEY KELLY MOORE VS. ROBERT HINGLE, JUDGE TWENTY-SECOND JUDICIAL DISTRICT COURT, PARISH OF PLAQUE- MINES. ·

It being alleged by an opponent, claiming appointment as administrator of a suc_ cession by preference, that a prior applicant therefor has been illegally and prematurely appointed, and that the order of appointment and the letters of administration thereunder issued are absolutely null and void and *ultra vires*, no right or title can absolutely vest in the appointee so long as such opposition remains undisposed of.

As, under the law, no suspensive appeal can be taken by an opponent claiming appointment as administrator from an adverse judgment, radical defects and illegal proceedings of the court in respect thereto are open to examination by the Supreme Court in the exercise of its supervisory jurisdiction.

ON APPLICATION for a Writ of *Certiorari*.

*James Wilkinson* for Relatrix.

*John Dymond, Jr.,* for Respondent.

Submitted on briefs April 23, 1898.
Opinion handed down May 16, 1898.

The opinion of the court was delivered by

WATKINS, J.    The relief demanded has reference to a contest in the respondent's court over the selection and appointment of a legal representative for the succession of one Charles Kelly, which was opened by his death in the parish of Plaquemines in July, 1896— the sole asset of which is a piece of real estate subject to mortgage in favor of Frank Giordano, the first applicant for the appointment.

The relatrix assigns as cause for her application that the deceased was her natural father by whom she had been frequently and repeatedly acknowledged during his lifetime as his natural daughter, and that she was entitled to be appointed, by preference, administratrix of said succession.

Her averment is, that on the 5th of October, 1896, said Frank Giordano filed an application to be appointed administrator, and was by the respondent appointed and granted letters of administration on the seventh day thereafter—that is to say, on the 17th of October, 1896—and that letters of administration were issued to him on the third day thereafter.

That the law neither allows the appointment of an administrator, nor the issuance of letters of administration, until after the expiration of ten days from the first insertion of the notice of the application in the official newspaper of the parish; and that the appointment of Giordano having been made prior to the expiration of that delay the act of the respondent was *ultra vires* and void, and the letters granted thereunder were likewise illegal and void.

That neither the affidavit, with reference to the publication of the application, nor the certificate of the clerk, on the faith of which the respondent's order is alleged to have been granted, had been in fact filed in the clerk's office until the 19th of October, the day previous to that on which the appointment of Giordano was made, and it was, therefore, unauthorized.

That under said illegal order and letters Giordano was qualified, and immediately thereafter he obtained an order for the sale of the property of the succession and caused the sale to be advertised.

That on the 28th of November, 1896, she filed an opposition, in which is fully set forth the premature and illegal acts complained of, and prayed for judgment annulling said order of appointment and the letters of administration which had been thereunder issued.

That during the course of the trial it was for the first time devel-

oped that her husband had disappeared some years previously and that his whereabouts were unknown, and thereupon counsel for Giordano moved the dismissal of her opposition because of her lack of authorization; and thereupon opponent's counsel replied by requesting her *immediate* authorization by the court and that she be permitted to prosecute her opposition as though she had been authorized prior to the filing of same.

That the respondent acted at once upon the suggestion of opponent's want of authorization and orally directed that a non-suit be entered; but that counsel for relatrix tendered his *written* motion for her authorization before respondent's action had been formally entered upon the minutes of the court, and he thereupon made and signed the following order, viz.:

"Let Mrs. Patsy Kelly be authorized to prosecute this suit.

"ROBERT HINGLE, *Judge.*"

That notwithstanding the foregoing order was made and signed on the 9th of December, 1897, and filed in the record, a judgment was subsequently signed and filed on the 6th of January, 1898—very nearly one month having in the meanwhile elapsed—non-suiting relatrix as opponent for *want* of authorization.

That thereupon she applied for a new trial, when her application was met with the last named decree of non-suit, and with the reply of the respondent that a new trial was inadmissible when the judgment pronounced was one of non-suit, and that his only remedy was by appeal.

That well knowing a *suspensive* appeal would not lie from an order appointing an administrator, the relatrix renewed her opposition, adopting all the allegations of her original opposition, and obtained the judge's order of authorization in the following words, viz.:

"Let Mrs. Patsey Kelley Moore be authorized to prosecute this opposition and application.

"Open court, January 6, 1898.

"ROBERT HINGLE, *Judge.*"

Said renewal of the opposition and order of authorization bearing same date as the judgment of non-suit above referred to.

That thereupon the respondent adjourned his court *sine die*, and there has been no term of the same held since that date, and prior to the present application for relief having been made, at which the

opposition and application for appointment by the relatrix could have been fixed for trial or tried; but that notwithstanding that fact, Giordano was permitted to file another petition for appointment, at Chambers, out of term time, during the vacation of court, and without previous notice of any kind to relatrix, by publication or citation, on the 26th of February, 1898, the petitioner acting upon the assumption that opponent had not first paid the costs of the first opposition, and that the payment of them was a condition precedent thereto.

Then follows the following averment of the relatrix, viz.:

"That without publication of this new demand; without notice to the relatrix or her counsel; without certificate from the clerk of the *absence* of opposition, and with full knowledge of the pending opposition of relatrix which the judge had himself authorized and signed in this cause; without any new affidavit; without a bond given to secure the letters, the former being null and void like the letters (which were first issued), and which they purported to secure, the Hon. Robert Hingle, judge of the court, signed on February 26, 1898, an order granting letters of administration on the estate of relatrix' father to said Giordano."

She further avers, that it is under the last named illegal order of appointment and the letters of administration thereunder issued, that Giordano qualified, and procured the probate order for the sale of the succession real estate of which the relatrix complains.

She further avers, "that counsel for Giordano being well aware, that said order was illegal, and in fact a judgment rendered without hearing the parties, prepared a typewritten reservation in said order which the District Judge was induced to sign, to *Frank Giordano* of any and all contentions as to the *legality* of all prior letters."

Having quoted *in extenso* and analyzed the allegations of the relatrix' petition, we will also quote the synopsis which she makes of her demands as the more accurate method of stating them, and which are of the following tenor, viz.:

"1. Because (the respondent) acted contrary to law and exceeded his powers in granting an order to Giordano for letters on October 17 (1897), two days before the clerk of the court filed any certificate, and only seven days after the publication of first monition.

"2. Because he acted contrary to law, and exceeded his powers

in signing said letters on the 20th of October (1897), the ninth clear day after the first publication.

"3. Because any ruling upon a verbal motion to non-suit is always within the discretion and control of the court; and that it was illegal. for the court in *one* order to authorize the (opponent) to prosecute this suit, and to subsequently enter up a judgment non-suiting her for lack of authorization.

"4. Because it was illegal and arbitrary for the court to declare that she had no right to apply for a new trial from a judgment of non-suit.

"5. That it is and was a denial of justice, and was illegal, arbitrary, null and void for the lower court, after authorizing relatrix to file and prosecute her opposition and application, and after said opposition and application had been filed, to issue, out of term time, without hearing the parties, on an *ex parte* petition, without bond, affidavit, publication, or any other notice, letters of administration to the original applicant whose petition had been steadily opposed; and who, despairing of obtaining such letters contradictorily, persuaded the court, by this *ex parte* proceeding, to ignore her formal pleadings."

The *gravamen* of the relatrix' complaint is, that she has no other adequate and sufficient remedy than her application to this court for the exercise of the supervisory power, for the reason that under the law she is not afforded the remedy of a *suspensive* appeal from the order of court appointing Giordano administrator; and having no standing in court to enjoin the succession sale, the sole asset thereof would have been disposed of pending the litigation in respect to the appointment.

In his return, respondent makes a similar statement to that of the relatrix, producing and annexing a certified copy of the *mortuaria*, and therefrom we make the following extract, viz.:

"Respondent represents that he considered, and that he now considers, that in order to legally contest on January 6, 1898, the right of the said Frank Giordano to act under letters of administration actually issued to him in that succession on October 20, 1896, it was necessary for the said Patsey Kelley, after the administrator had been acting in his said capacity for a full period of fifteen months, to proceed by petition and citation in a direct attack upon the said appoint-

ment, the legality thereof, and the right of the administrator to ful-fil the office.

" For this reason, considering therefore that there was no legal opposition pending on February 26, 1898, if opponent had mistaken her remedy it was not the fault of respondent; and, at the request of counsel for the said administrator, *reserving to the said administrator his full contention as to his rights in the premises under the original letters issued, and simply to protect the title to real estate which was to be sold to further the ends of justice, and enable the administrator to convert into cash and sell to better advantage the only asset of the succession, consisting of a piece of real estate which was mortgaged as aforesaid, new letters of administration were thereupon issued to Frank Giordano.*"

The foregoing extract from the return is a substantial verification of the principal grounds which are assigned by the relatrix for relief by *certiorari,* coupled with an amplification of the reservation he made in favor of Giordano; but this reservation, taken in connection with the reason the respondent assigns for granting additional letters to Giordano, is utterly subversive of his entire theory.

But if this were not so, an examination of the exemplications of the succession record completely sustains the complaint of the relatrix and supplies any possible hiatus in her statement.

For it appears that the opponent attacked the legality of the original appointment as having been prematurely made, and without the administration of proper proof of publication of the application.

To this opposition the contestee excepted, and his exception having been overruled he filed an answer, and the trial began upon issue thus joined. During the progress of the trial the testimony developed the fact that opponent was a married woman, and the record disclosed her lack of authorization to institute her demand. Thereupon counsel for the contestee moved for the dismissal of the relatrix' opposition, and the judge granted the request; but at one and the same time counsel for opponent demanded of the *court,* then and there, to authorize her to prosecute her opposition, and the request was then granted, and an order of authorization was signed.

This, the judge had, under the authorities, an undoubted legal right to do, and once done, the authorization became complete and effective; and the judge was, thereafter, without any power to legally recall or revoke the same. And the effect of the authoriza-

tion once granted, was to relieve the opponent of her legal disability to institute and prosecute her opposition.

But the record discloses that near thirty days subsequently, the respondent signed another decree of dismissal of relatrix' opposition because she had not been duly authorized; and that he thereafter, and upon the same day, refused to grant a new trial in her favor on the ground that the Code of Practice did not warrant the granting of a new trial in such a case.

Conceding for the argument only, that this second decree, or judgment of dismissal, had any legal effect—but in fact we are of opinion that it had not—we think it evident that the respondent entertained a mistaken notion of the law.

The language of the Code of Practice is general in terms, and their significance is plain. They are to the effect that " the party who believes himself aggrieved by the judgment given against him may  *  *  *   pray for a new trial, which *must be granted, if there be good ground for the same,"* etc.    Art. 558.    (Our italics.)

Was not a *judgment* given against the opponent when her demand was dismissed?

It will not do to say that this dismissal was really one of non-suit, only when the immediate effect of the decree was, at the same time, to deprive opponent of the right of *suspensive* appeal, altogether, therefrom.

But the judge confessed his own want of confidence in the position he had taken, by granting to Giordano *new* letters; but being *ex parte,* the order had no effect with regard to the relatrix whose opposition was still pending.

This whole proceeding is manifestly illegal and unwarranted in law.

It is therefore ordered and decreed that the preliminary writ of *certiorari* be made absolute, and that the judgments and decrees complained of be decreed illegal; and that same be annulled and avoided, and the opposition of the relatrix be reinstated for trial according to law; and that the respondent be taxed with cost.